UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------X
                                          :
NATIONAL CREDIT UNION ADMINISTRATION      :
BOARD, as Liquidating Agent of            :
Southwest Corporate Federal Credit        :    13 Civ. 6731 (DLC)
Union and Members United Corporate        :
Federal Credit Union,                     :    OPINION & ORDER
                                          :
                          Plaintiff,      :
                                          :
          -v-                             :
                                          :
UBS SECURITIES, LLC,                      :
                                          :
                          Defendant.      :
                                          :
------------------------------------------X

APPEARANCES:

For the Plaintiff:

David C. Frederick, Wan J. Kim, Gregory G. Rapawy, and Andrew C.
Shen
Kellogg, Huber, Hansen, Todd, Evans & Figel, P.L.L.C.
Sumner Square, 1615 M Street, N.W., Suite 400
Washington, DC 20036

David H. Wollmuth, Fredrick R. Kessler, Steven S. Fitzgerald,
and Ryan A. Kane
Wollmuth Maher & Deutsch LLP
500 Fifth Avenue, 12th Floor
New York, NY 10010

George A. Zelcs
Korein Tillery LLC
205 North Michigan Avenue, Suite 1950
Chicago, IL 60601

Stephen M. Tillery, Greg G. Gutzler, Peter H. Rachman, and
Robert L. King
Korein Tillery LLC
505 North Seventh Street, Suite 3600
St. Louis, MO 63101

For the Defendant:

Jay B. Kasner, Scott D. Musoff, and Gary J. Hacker
Skadden, Arps, Slate, Meagher & Flom LLP
Four Times Square
New York, NY 10036


DENISE COTE, District Judge:

This Opinion addresses a narrow motion to dismiss filed in
one of seven actions brought in this district by the National
Credit Union Administration Board ("NCUA"), as liquidating agent
of Southwest Corporate Federal Credit Union ("Southwest") and
Members United Corporate Federal Credit Union ("Members United")
(collectively, the "Credit Unions").  NCUA has sued various
financial institutions involved in the packaging, marketing, and
sale of residential mortgage-backed securities ("RMBS") that the
Credit Unions purchased in the period from 2005 to 2007.[1]  The
complaints in the NCUA actions generally assert that the
Offering Documents used to market and sell RMBS to the Credit

---

[1] Nat'l Credit Union Admin. Bd. ("NCUA") v. Morgan Stanley & Co.,
Inc., et al., 13 Civ. 6705 (DLC); NCUA v. Wachovia Capital
Markets, LLC n/k/a Wells Fargo Secs., LLC, 13 Civ. 6719 (DLC);
NCUA v. Goldman Sachs & Co., et al., 13 Civ. 6721 (DLC); NCUA v.
RBS Secs., Inc., et al., 13 Civ. 6726 (DLC); NCUA v. Barclays
Capital, Inc., 13 Civ. 6727 (DLC); NCUA v. UBS Secs., LLC, 13
Civ. 6731 (DLC); and NCUA v. Credit Suisse Secs. (USA) LLC, et
al., 13 Civ. 6736 (DLC).
    Two other actions, initially brought by NCUA, have since
settled.  NCUA v. Bear Stearns & Co., et al., 13 Civ. 6707
(DLC); NCUA v. Residential Funding Secs., LLC n/k/a Ally Secs.,
LLC, 13 Civ. 6730 (DLC).
    Seven other actions are currently being brought by NCUA
against these and other defendants in Kansas and California.

Unions during the relevant period contained material
misstatements or omissions with respect to (1) whether the
underlying mortgage loans were underwritten according to certain
risk guidelines, and (2) certain statistics regarding the
quality of the underlying loans, including the loan-to-value
("LTV") ratio, the owner-occupancy status, and the borrowers'
debt-to-income ("DTI") ratio.

This action is brought against UBS Securities, LLC ("UBS"),
and it asserts claims under Sections 11 and 12(a)(2) of the
Securities Act of 1933, 15 U.S.C. § 77k, *l*(a)(2) (2012)
("Securities Act"); the Illinois Securities Act of 1953, 815
Ill. Comp. Stat. Ann. 5/12 & 13 (2013) ("Illinois Blue Sky
Law"); and the Texas Securities Act, Tex. Rev. Civ. Stat. Ann.
art. 581, § 33 (2013) ("Texas Blue Sky Law").  UBS has moved to
dismiss (1) the Securities Act claims and (2) the state law
claims as to two MASTR Adjustable Rate Mortgage Trust 2007-HF2
("MASTR 2007-HF2") Certificates.  These two Certificates are
among twenty on which NCUA bases its claims for recovery in this
action.  One was purchased by Southwest; the other by Members
Union.

Several Opinions have already been issued in these
coordinated actions to address the pleadings.  One Opinion
addressed a motion to dismiss filed in the lead case brought by
NCUA in this district.  NCUA v. Morgan Stanley & Co., Inc., et

3

al., 13 Civ. 6705 (DLC), 2014 WL 241739 (S.D.N.Y. Jan. 22, 2014)
("Morgan Stanley I").  Another addressed NCUA's motion to strike
certain affirmative defenses in Morgan Stanley's answer.  NCUA
v. Morgan Stanley & Co., Inc., et al., 13 Civ. 6705 (DLC), 2014
WL 1673351 (S.D.N.Y. Apr. 28, 2014) ("Morgan Stanley II").  A
third addressed a follow-on motion to dismiss filed in another
case brought by NCUA.  NCUA v. Wachovia Capital Markets, LLC, 13
Civ. 6719 (DLC), 2014 WL 1795294 (S.D.N.Y. May 6, 2014)
("Wachovia").  Familiarity with these Opinions is assumed; all
capitalized terms have the meanings previously assigned to them.

The motion to dismiss the Securities Act claims is granted;
their dismissal is undisputed by the parties for the reasons set
forth in Morgan Stanley I.  For the reasons set forth below, the
motion to dismiss the state law claims with respect to MASTR
2007-HF2 is denied.


BACKGROUND

The operative complaint includes the following allegations.
The Credit Unions purchased over $400 million in RMBS
underwritten or sold by UBS entities during the period between
January 2006 and July 2007.  Approximately $35 million of these
purchases were invested in the MASTR 2007-HF2 offering; Members
United purchased a MASTR 2007-HF2 Certificate for approximately

$20 million in February 2007, and Southwest purchased a MASTR 2007-HF2 Certificate for $15 million in July 2007.

The MASTR 2007-HF2 Certificates were rated AAA at the time of purchase.  By late 2008, however, they had been downgraded to junk status.  Twelve months after they were issued, almost 25% of the aggregate loans in the MASTR 2007-HF2 securitization were delinquent.  This rate was among the worst for the securities sold by UBS that are at issue in this lawsuit.  Of the fifteen other UBS securitizations, only four had a higher delinquency rate within twelve months after issuance.  By June 2013, almost 29% of the aggregate loans in MASTR 2007-HF2 were delinquent.[2]

NCUA alleges that the Offering Documents for MASTR 2007-HF2 contained material misrepresentations.  The July 30, 2007 Prospectus Supplement, which is cited in the Amended Complaint, reads in relevant part as follows:

> The primary originators of the Loans are UBS Home Finance ("UBS Home Finance"), with respect to approximately 51.11% of the Stated Principal Balance of the Loans as of the Cut-Off Date.  Approximately 46.46% of the Loans were originated by certain other unaffiliated originators (each of which originated less than 10% of the Loans) in accordance with the underwriting guidelines of UBS Home Finance and approximately 2.43% of the Loans were originated by certain other originators (each of which originated

---

[2] Although this suit involves twenty Certificates, it involves only sixteen securitizations.  The Credit Unions sometimes purchased multiple Certificates for the same securitization.  The delinquency rate figures in the text are based on Table 4 in the Amended Complaint, which provides "aggregate" delinquency rates for all sixteen securitizations at issue in this suit.

less than 10% of the Loans) in accordance with such
originators' underwriting guidelines.

(Emphasis added.)  The Prospectus Supplement also asserts:

> All loans submitted for consideration are subject to
> review for compliance with UBS Home Finance
> guidelines, the applicable product matrix, as well as
> with local, state, and federal mortgage lending
> requirements.
>
> UBS Home Finance's principal underwriting method is
> the Automated Underwriting System (AUS).  Requirements
> for the use of an AUS system in the decision making
> process will depend upon several factors, namely the
> loan amount.  All loans must be underwritten via the
> UBS Home Finance proprietary underwriting system.

(Emphasis added.)[3]

Thus, the Prospectus Supplement represents that roughly

half of the loans were originated by UBS Home Finance and that

the remaining loans came from several other originators, no one

of which originated over 10% of the loans underlying the

securitization.  But, with the exception of fewer than 3% of the

loans, all of the originators used the UBS Home Finance

underwriting guidelines when issuing the loans.  The Amended

Complaint identifies two of the smaller originators for MASTR

2007-HF2: Alliance Bancorp and Silver State.  They originated

6.6% and 3.1% of loans in MASTR 2007-HF2, respectively.  Based

on the description in the Prospectus Supplement, these two

---

[3] MASTR 2007-HF2 Prospectus Supplement, June 30, 2007, available
at http://www.sec.gov/Archives/edgar/data/1405861/
000088237707002000/d690307_424b5.htm.

6

originators would have been among those that used the UBS Home Finance underwriting guidelines.

NCUA alleges that the Prospectus Supplement's representations regarding originators' compliance with the UBS Home Finance underwriting guidelines were material misstatements.  It asserts that

> the quality of the loans in the mortgage pool directly affects the riskiness of the RMBS investment, and the quality of the loans is dependent upon the underwriting process employed.  The preceding statements [in the Prospectus Supplement] were untrue at the time they were made because, among other things, the Originators did not adhere to the stated underwriting guidelines . . . ."

A report and analysis by the third-party due diligence firm Clayton Holdings, which tested approximately 10% of all loans securitized by UBS and sold as RMBS from early 2006 through the middle of 2007, suggests that 20% of these loans did not comply with the relevant underwriting guidelines.  There is no indication in the Amended Complaint, however, that the analysis performed by Clayton Holdings included any loans originated by UBS Home Finance or pursuant to guidelines issued by UBS Home Finance.

There are no allegations based on witness statements or government reports that UBS Home Finance itself engaged in shoddy underwriting practices.  UBS Home Finance is not identified as an originator for any of the other eighteen

Certificates at issue in this lawsuit.  There are, however,
specific allegations of inferior underwriting practices at other
originators responsible for all or many of the loans underlying
the other eighteen Certificates at issue in this lawsuit.

There are also specific allegations of inferior
underwriting practices with respect to two of the underwriters
for MASTR 2007-HF2 who were jointly responsible for fewer than
10% of the Certificates' loans.  Having consulted with counsel
in another RMBS lawsuit, FHLB v. Ally Fin. Inc., No. 11-10952
(D. Mass. filed June 29, 2012), NUCA alleges that a review of
certain loans originated by Alliance Bancorp in that lawsuit
reveals multiple deviations from the underwriting guidelines.
Additionally, a former Silver State employee has described, in a
public radio interview, how Silver State stopped adhering to
underwriting guidelines during the time period in question.  As
already described, the Prospectus Supplement asserted that the
loans issued by these two entities were originated in accordance
with the UBS Home Finance guidelines.

This case, along with the other related NCUA cases, was
filed on September 23, 2013.  Following the denial of the motion
to dismiss in Morgan Stanley I,[4] an Order of February 7, 2014
stayed all further motion to dismiss practice in the remaining

---

[4] Discovery commenced in earnest in all cases as soon as the
Morgan Stanley I Opinion was issued.

cases pending resolution of a motion to transfer filed before the Judicial Panel on Multi-District Litigation Panel ("JPML"). On February 12, the JPML denied the motion to transfer. Following a conference with the parties on March 11, the stay was lifted, and a schedule was entered for briefing any further motion to dismiss.

On March 25, UBS moved to dismiss the complaint.  NCUA responded by filing an Amended Complaint on April 11.  This is the operative complaint for present purposes.  On May 5, UBS moved to dismiss the Amended Complaint.  The motion became fully submitted as of June 6.


DISCUSSION

UBS's motion consists of essentially two arguments.  First, UBS contends that the Amended Complaint suffers from a "dearth of originator-specific allegations" as NCUA has provided originator-specific allegations of misconduct for originators responsible for less than 10% of the loans underlying MASTR 2007-HF2 and none for UBS Home Finance, which originated more than 50% of the loans underlying MASTR 2007-HF2.  Second, UBS posits that the originator-specific allegations as to Alliance Bancorp and Silver State are inadequate.

As a preliminary matter, it should be observed that similar versions of these arguments have been addressed in this Court's

previous Opinions -- the Opinions in Morgan Stanley I and
Wachovia and two Opinions in the RMBS cases brought by the
Federal Housing Finance Agency ("FHFA"), as conservator of the
Federal National Mortgage Association ("Fannie Mae") and the
Federal Home Loan Mortgage Corporation ("Freddie Mac").  Fed.
Hous. Fin. Agency v. UBS Americas, Inc., et al., 858 F. Supp. 2d
306 (S.D.N.Y. 2012) ("UBS"); FHFA v. JPMorgan Chase & Co., 902
F. Supp. 2d 476, 493 (S.D.N.Y. 2012) ("JPMorgan").  The Court
assumes familiarity with these prior Opinions.

The state law claims at issue here are, for all relevant
purposes, strict liability claims subject to the pleading
standard set forth in Rule 8(a), which requires that the
complaint contain a "short and plain statement of the claim
showing that the pleader is entitled to relief."  Rule 8(a)(2),
Fed.R.Civ.P.  See Morgan Stanley I, 2014 WL 241739, at *15; see
generally Morgan Stanley II, 2014 WL 1673351, at *3-*8 (S.D.N.Y.
Apr. 28, 2014) (discussing how the claims under the Illinois
Blue Sky Law and Texas Blue Sky Law are, for all relevant
purposes, strict liability claims).  Under Rule 8(a), any claim
must be "plausible on its face."  Morgan Stanley I, 2014 WL
241739, at *15 (citing Ashcroft v. Iqbal, 556 U.S. 662, 678
(2009)).  It is well-established in this Circuit that "[i]n the
context of claims arising under the Securities Act and parallel
state laws, Rule 8(a) places a relatively minimal burden on the

plaintiff."  Id. (citing NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co., 693 F.3d 145, 157 (2d Cir. 2012)). Moreover, the Second Circuit has emphasized that the factual content of the complaint need only be "suggestive of" liability to comply with the Rule 8(a) pleading standards.  N.J. Carpenters Health Fund v. Royal Bank of Scotland Grp., 709 F.3d 109, 121 (2d Cir. 2013).  Additionally, plausibility is determined based on the totality of the allegations in the operative complaint; there is no "minimum" set of allegations or "litmus test" for pleading in RMBS cases.  Wachovia, 2014 WL 1795294, at *2, *4 (citing N.J. Carpenters, 709 F.3d at 123 n.7).

Here, NCUA's Amended Complaint includes allegations setting forth reasons to believe that the twenty Certificates issued by UBS included too many loans that were not issued in compliance with their associated underwriting guidelines, and that that same pattern held true for the two Certificates at issue in this motion.  Those allegations include (1) the industry-wide practice of originators failing to comply with underwriting guidelines, including the practices of originators responsible for many of the loans underlying the other eighteen Certificates; (2) UBS's poor performance during due diligence,

as reflected in the Clayton Holdings analysis;[5] (3) the poor
performance of each of the twenty UBS Certificates on which NCUA
has brought suit; (4) the downgrade of the two Certificates
underlying MASTR 2007-HF2 to junk status in 2008; and (5) the
rapid pace at which a very substantial percentage of the loans
for those two Certificates became delinquent.  Accepting these
allegations as true, we know the following: first, with respect
to 18 of the 20 Certificates at issue in this suit, that there
are an abundance of originator-specific allegations suggesting
systemic disregard of the relevant underwriting guidelines;
second, that UBS due diligence did not weed out loans that
failed to comply with the relevant underwriting guidelines; and
third, with respect to the two Certificates at issue in the
present motion, that the underlying loan performance was among
the worst of the 20 Certificates.  These allegations are
"suggestive of" systemic disregard of the underwriting
guidelines by the key originators responsible for the loans
underlying the two Certificates.  In that light, the allegations
specific to underwriting failures by Alliance Bancorp and Silver
State, even though these underwriters together contributed fewer

---

[5] While there is no indication that the work conducted by Clayton
Holdings included review of any loans specifically underwritten
according to the UBS Home Finance guidelines, the inference is
that in securitizing loans UBS did not diligently reject loans
that failed their originators' underwriting guidelines, despite
the above-recited statements in the Offering Documents.

than 10% of the loans backing the two Certificates, are
confirmatory and even unsurprising.  These allegations, when
viewed in their totality, render plausible NCUA's claim that the
statements in the Offering Documents regarding the degree to
which the loans in the MASTR 2007-HF2 Certificates were issued
in compliance with their underwriting guidelines were material
misrepresentations.

In this motion, UBS places great emphasis on the fact that
Alliance Bancorp and Silver State were responsible for less than
10% of the loans underlying MASTR 2007-HF2, and that there are
no other originator-specific allegations for these two
Certificates.  It relies on language from various RMBS
decisions, including decisions from this Court, which have
underscored the importance of originator-specific allegations
when rejecting motions to dismiss premised on statements in
Offering Documents that loans had been underwritten in
compliance with originators' guidelines.  This argument fails.

The guiding star for pleading an RMBS strict liability
claim remains Rule 8(a).  A well-pleaded claim must give a
defendant fair notice and state a plausible theory of liability.
Whether a pleading does so is a "context-specific task that
requires the reviewing court to draw on its judicial experience
and common sense."  Iqbal, 556 U.S. at 679.

When the claim is that an offering document in a securities

13

transaction contains a material misrepresentation, the plaintiff must include sufficient allegations to give fair notice of the nature of the alleged misrepresentation and to plausibly plead that it was a material misrepresentation.  Materiality is usually a question of fact that is not amenable to resolution on a motion to dismiss, but at the extremes, claims may be dismissed for failure to plausibly plead that a particular misrepresentation was in fact material.  See, e.g., Operating Local 649 Annuity Trust Fund v. Smith Barney Fund Mgmt. LLC, 595 F.3d 86, 91 (2d Cir. 2010).  The complaint must also plausibly plead that the representation was false.

When the plaintiff claims that a representation that the loans underlying a security were originated in compliance with underwriting guidelines was false, the complaint must contain sufficient support to render that assertion plausible.  As noted already, that is not a heavy burden.  Morgan Stanley I, 2014 WL 241739, at *15.  The allegations need only be "suggestive of" liability.  N.J. Carpenters, 709 F.3d at 121.  And there is no litmus test that must be passed.  Wachovia, 2014 WL 1795294, at *4.

In many instances, plaintiffs have pointed to specific practices at originators in making such claims.  And, similarly, courts have discussed originator-specific allegations in rejecting motions to dismiss.

14

One of the first decisions by a court of appeals to rely upon the importance of originator-specific allegations was Plumbers' Union Local No. 12 Pension Fund v. Nomura Asset Acceptance Corp., 632 F.3d 762, 772-74 (1st Cir. 2011). In Nomura, the First Circuit considered "whether enough has been said in the complaint -- beyond conclusory assertions -- to link [flawed industry-wide underwriting] practices with specific lending banks that supplied the mortgages that underpinned the trusts." Id. at 773. The court noted that other courts had relied on statements from confidential witnesses and internal emails. Id. Ultimately, in Nomura, the court sustained the underwriting allegations based on "the sharp drop in the credit ratings after the sales and the specific allegations as to" a "key" originator for the RMBS at issue. Id. at 772-73 (emphasis omitted). A review of the district court record in Nomura, indicates that the "key" originator was apparently responsible for roughly 20% of the loans underlying one the securities at issue. See Amended Complaint, at 22, ECF No. 8, Plumbers' Union Local No. 12 Pension Fund v. Nomura Asset Acceptance Corp., No. 08-cv-10446 (RGS) (D. Mass. filed June 30, 2008).

More recently, in N.J. Carpenters, in the context of assessing RMBS underwriting allegations, the Second Circuit observed that a "majority of district courts in this Circuit have agreed with the First Circuit [in Nomura], permitting

15

claims . . . to proceed where the plaintiff has provided a
fairly specific account of how the relevant underwriters had
systematically disregarded the guidelines disclosed in a
security's registration statement."  709 F.3d at 122 (citation
omitted).  The court found that the complaint at issue did
present allegations "suggestive of" liability when it recited
statements by former employees of the originator and the issuer
recounting the originator's disregard of underwriting
guidelines.  Id. at 123.  These allegations were linked to the
specific securities by high rates of early payment default.  Id.
"These allegations, taken together, permit[ted] . . . the
reasonable inference" that the Offering Document's description
of underwriting standards misstated actual practices.  Id.  The
court added that the downgrading of the securities by credit
rating agencies was "wholly consistent" with and "provided[d]
further support for" the allegation that underwriting guidelines
had been abandoned.  Id. at 125.

    The RMBS complaints reviewed by this Court in either the
FHFA or NCUA lawsuits have similarly relied upon a variety of
allegations in asserting misrepresentations regarding compliance
with underwriting guidelines.  In UBS, the complaint relied
primarily on a forensic review of individual loan files.  UBS,
858 F. Supp. 2d at 332.  The claim was further supported by
government reports regarding failures by originators that

16

contributed loans to the securitizations, witness statements, the collapse of credit ratings, and a surge in defaults.  Id.

In JPMorgan, the FHFA relied upon a similarly broad set of allegations to make its claims.  In rejecting the motion to dismiss that action's complaint, the Court addressed the defendants' argument that the forensic review undertaken by FHFA said nothing about the many Certificates whose loans were not sampled.  JPMorgan, 902 F. Supp. 2d at 488.  The Court observed that the linkage to individual Certificates was provided by the loan performance and credit-rating histories of the Certificates, adding that "these market events are telltale signs of defects that were present in the securitizations all along, albeit unbeknownst to the purchasing public."  Id. at 488-89.

In the suite of lawsuits it has filed, NCUA has relied on information about originators responsible for many of the loans underlying the purchased Certificates, taken from government reports, court filings, and other publicly available information.  Morgan Stanley I, 2014 WL 241739, at *16.  When combined with credit rating downgrades in Morgan Stanley I, this Court found that sufficient to plausibly assert that the originator disregarded underwriting guidelines.  Id.

Most recently, in Wachovia, this Court reviewed a complaint in which the NCUA relied on an originator's high originate-to-

17

distribute ratio, and a post-sale delinquency history, to find
that "when viewed in their totality" the allegations created a
plausible inference that the originator systematically failed to
comply with its reported underwriting guidelines.  Wachovia,
2014 WL 1795294, at *3.  The Court rejected "Wachovia's attempt
to impose a pleading straight jacket on NCUA based on the facts
in N.J. Carpenters and Nomura."  Id. at *4.

UBS is correct that, unlike each of these cases, there are
no originator-specific allegations regarding the originators
responsible for over 90% of the loans backing the two
Certificates in MASTR 2007-HF2.  UBS is also correct that this
Court and others have spoken of the importance of originator-
specific allegations.  Just last month, this Court noted that
"[t]he parties agree that, for NCUA to state plausibly any
claims regarding misrepresentations about underwriting conduct
in the Offering Document relating to AMN1 [the challenged
Certificate at issue], it must set forth originator-specific
allegations."  Id. at *2.  These statements were made, however,
in the context of applying Rule 8(a)'s plausibility standard to
particular circumstances, i.e., to complaints that included
originator-specific allegations.  These statements cannot alter
the standard for conducting a Rule 8(a) analysis.  As stated in
this Court's prior decisions, there is no one set of allegations
that every RMBS complaint must contain to survive a motion to

dismiss; Rule 8(a)'s standard must be applied in the context of an individual complaint's allegations.  Courts are permitted to draw reasonable inferences from the alleged facts, and are required to draw on their judicial experience and to apply common sense.  N.J. Carpenters, 709 F.3d at 123 n.7.  When that standard is applied here, the complaint plausibly pleads that UBS made a material misrepresentation regarding the extent to which the loans underlying MASTR 2007-HF2 complied with underwriting guidelines.

This leaves only UBS's second argument: that the allegations specific to Alliance Bancorp and Silver State allegations are inadequate.  Specifically, UBS argues that the court filings and public interview "hardly evidence" that these originators systematically disregarded underwriting standards.

This argument also fails.  Here, the Alliance Bancorp allegations are supported by a loan analysis included in court filings, and the Silver State allegations are supported by publicly available information.  These sources, when combined with the other allegations in the pleading, are more than adequate to support the originator-specific allegations for these two originators included in the Amended Complaint.

CONCLUSION

Defendant's May 5, 2014 motion to dismiss is granted as to the Securities Act claims only.


SO ORDERED:

Dated:    New York, New York
          June 10, 2014


_____
              DENISE COTE
     United States District Judge