```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------X
NATIONAL CREDIT UNION ADMINISTRATION    :
BOARD, etc.,                            :
                          Plaintiff,    :        13cv6731 (DLC)
              -v-                       :
                                        :
UBS SECURITIES LLC,                     :
                                        :
                          Defendant.    :
                                        :
---------------------------------------- X
NATIONAL CREDIT UNION ADMINISTRATION    :
BOARD, etc.,                            :
                          Plaintiff,    :        13cv6736 (DLC)
                                        :
              -v-                       :        OPINION AND ORDER
                                        :
CREDIT SUISSE SECURITIES (USA) LLC,     :
CREDIT SUISSE FIRST BOSTON MORTGAGE     :
SECURITIES CORP.,                       :
                                        :
                          Defendants.   :
                                        :
----------------------------------------X
```

APPEARANCES

For the plaintiff National Credit Union Administration Board:
David C. Frederick
Wan J. Kim
Gregory G. Rapawy
Andrew C. Shen
Kellogg, Huber, Hansen, Todd, Evans & Figel, PLLC
1615 M Street, N.W., Suite 400
Washington, DC 20036

George A. Zelcs
Korein Tillery LLC
205 North Michigan Avenue, Suite 1950
Chicago, IL 60601

Stephen M. Tillery
Robert L. King
Korein Tillery LLC
505 North Seventh Street, Suite 3600
St. Louis, MO 63101

Erik Haas
Peter W. Tomlinson
Philip R. Forlenza
Henry J. Ricardo
Patterson, Belknap, Webb & Tyler LLP
1133 Avenue of the Americas
New York, NY 10036

David H. Wollmuth
Frederick R. Kessler
Steven S. Fitzgerald
Ryan A. Kane
Wollmuth Maher & Deutsch LLP
500 Fifth Avenue, 12th Floor
New York, NY 10110

For the defendant UBS Securities LLC:
Jay B. Kasner
Scott D. Musoff
Robert A. Fumerton
Skadden, Arps, Slate, Meagher & Flom LLP
4 Times Square
New York, NY 10036

For the defendants Credit Suisse Securities (USA) LLC and Credit
Suisse First Boston Mortgage Securities Corp.:
Richard W. Clary
Michael T. Reynolds
Lauren A. Moskowitz
Omid Nasab
Cravath, Swaine & Moore LLP
825 Eighth Avenue
New York, NY 10019

DENISE COTE, District Judge:

This Opinion addresses the calculation of prejudgment

interest applicable to the National Credit Union Administration

Board's ("NCUA") claims in the above-captioned actions against

defendant UBS Securities LLC ("UBS"), and defendants Credit

Suisse Securities (USA) and Credit Suisse First Boston Mortgage

Securities Corp. (collectively "Credit Suisse").  The defendants move for summary judgment on (1) the proper principal balance upon which prejudgment interest must be calculated, and (2) the applicable interest rate to NCUA's claims brought under the Texas Securities Act ("TSA").  For the reasons that follow, prejudgment interest on all of NCUA's claims shall be calculated based on the declining principal balance and at the coupon rate applicable for each certificate.

## Background

The following facts are undisputed.  NCUA, as liquidating agent for Southwest Corporate Federal Credit Union ("Southwest") and Members United Corporate Federal Union ("Members United," collectively with Southwest, the "Credit Unions"), filed the instant actions on September 23, 2013, alleging violation of the TSA and Illinois Securities Law ("ISL").[1]  The two actions were among seven related actions filed in this district on that date. The other five actions have been resolved through settlement.

NCUA's claims in these two actions are based on alleged misrepresentations in 29 certificates (the "Certificates") purchased in 24 securitizations (the "Securitizations") of

---

[1] NCUA also alleged violations of §§ 11 and 12(a) of the Securities Act (the "federal Securities Act").  The Court dismissed those claims on June 10, 2014.  Nat'l Credit Union Admin. Bd. v. UBS Sec., LLC, No. 13cv6731 (DLC), 2014 WL 2600133, at *3 (S.D.N.Y. June 10, 2014).

residential mortgage backed securities ("RMBS").  RMBS are
securities entitling the holder to income payments from pools of
residential mortgage loans that are held by a trust.  See Nat'l
Credit Union Admin. Bd. v. Morgan Stanley & Co., No. 13cv6705
(DLC), 2014 WL 241739, at *1 (S.D.N.Y. Jan. 22, 2014).  For each
of the securities at issue here, the offering process began with
a "sponsor," which acquired the mortgage loans that were to be
included in the offering.  The sponsor transferred a portfolio
of loans to a trust that was created specifically for that
Securitization.  This task was accomplished through the
involvement of an intermediary known as a "depositor."  The
trust then issued Certificates to an underwriter, in this case
UBS and Credit Suisse, which in turn, sold them to the Credit
Unions.  The Certificates were backed by the underlying
mortgages.  Thus, their value depended on the ability of
mortgagors to repay the loan principal and interest and the
adequacy of the collateral in the event of default.  For a
description of the originating and securitization process of
RMBS generally, see Federal Housing Finance Agency v. Nomura
Holding America, Inc., 104 F. Supp. 3d 441, 458-66 (S.D.N.Y.
2015) ("Nomura I").

The Securitizations were each issued and offered pursuant
to, inter alia, a prospectus and a prospectus supplement (the
"Offering Documents").  The prospectus supplements for each

4

Certificate provide that the trust will issue classes of Certificates, each of which represents a partial ownership interest in the trust.  Each Certificate has an initial principal balance or notional value.  The purchaser of a Certificate is entitled to receive principal repayments as well as interest payments at the specified rate according to the terms of the prospectus supplement.  Specifically, the interest payments are determined by the annual pass-through, or "coupon" rate for a particular class of Certificates multiplied by the applicable principal balance of that class of Certificates.[2] These payments are made using the funds received from the underlying mortgages.  With each payment made to the purchaser, the outstanding principal balance is reduced such that if all payments are received on time, the principal balance would eventually reach zero.

On February 5, 2016, UBS and Credit Suisse filed a joint motion for partial summary judgment, seeking a determination of (1) the proper principal balance upon which prejudgment interest must be calculated, and (2) the applicable interest rate to NCUA's claims brought under the TSA.  The motion became fully submitted on March 1.

---

[2] For each accrual period, this amount is multiplied by the applicable fraction of a year.  For example, for a one month accrual period, the fraction is 1/12, otherwise the fraction is the number of days in the accrual period divided by 365.

During briefing of this motion, on February 11, UBS made an offer of judgment to NCUA under Rule 68, Fed. R. Civ. P.  The offer provided that NCUA shall recover $33,014,265 from UBS plus prejudgment interest calculated at the rate and methodology as determined by the Court in this Opinion.  On February 25, NCUA notified the Court that it had accepted UBS's Rule 68 offer.  On March 10, Credit Suisse made an offer of judgment to NCUA under Rule 68.  The offer provided that NCUA shall recover $29,014,643 from Credit Suisse plus prejudgment interest calculated at the rate and methodology as determined by the Court in this Opinion. On March 24, NCUA notified the Court that it had accepted Credit Suisse's Rule 68 offer.

## Discussion

## I.   Method of Calculating Prejudgment Interest

### A.   The Texas Securities Act

Damages for violation of the TSA are determined as follows:

(1)  On rescission, a buyer shall recover (a) the consideration he paid for the security plus interest thereon at the legal rate from the date of payment by him, less (b) the amount of any income he received on the security, upon tender of the security (or a security of the same class and series).

* * *

(3)  In damages, a buyer shall recover (a) the consideration the buyer paid for the security plus interest thereon at the legal rate from the date of payment by the buyer, less (b) the greater of:

> > (i)  the value of the security at the time the
> >      buyer disposed of it plus the amount of any
> >      income the buyer received on the security;
> >      or
>
> > (ii) the actual consideration received for the
> >      security at the time the buyer disposed of
> >      it plus the amount of any income the buyer
> >      received on the security.

Tex. Rev. Civ. Stat. Ann. art. 581 § 33(D).  Thus, under the
plain language of the statute, a successful plaintiff may
recover an amount equal to: (1) the consideration it paid for
the security, plus (2) interest on the consideration, minus (3)
income received on the security (or, if it sold the security,
the value of the security or the consideration the plaintiff
received for the security plus any income it received on the
security).  The statute does not indicate whether the term
"interest thereon" refers to the initial principal balance
without any reduction for principal repayments or rather an
amount that is reduced with each principal repayment received by
the purchaser.

Because there is no Texas decision directly on point, this
issue is resolved by looking to federal law.  Texas courts look
to federal securities law to interpret the TSA where the
statutory language is similar.  Herrmann Holdings Ltd. v. Lucent
Techs. Inc., 302 F.3d 552, 563 (5th Cir. 2002); see also
Highland Capital Mgmt., L.P. v. Ryder Scott Co., 402 S.W.3d 719,
741 (Tex. App. 2012) ("[T]he Texas Legislature intended the TSA

to be interpreted in harmony with federal securities law."
(citation omitted)).  The language of the TSA regarding damages
tracks closely that of § 12(a) of the federal Securities Act,
which provides that a successful plaintiff may "recover the
consideration paid for [the] security with interest thereon,
less the amount of any income received thereon, upon the tender
of such security, or for damages if he no longer owns the
security."  15 U.S.C. § 77l.  Under the federal Securities Act,
prejudgment interest for RMBS claims is calculated using the
declining principal balance.  Fed. Hous. Fin. Agency v. Nomura
Holding Am., Inc., No. 11cv6201 (DLC), 2015 WL 640875, at *2
(S.D.N.Y. Feb. 16, 2015) ("Nomura II") ("With the return of
principal each month, the consideration paid declined in a
corresponding amount.").[3]  Accordingly, NCUA's claims under the
TSA shall be calculated using the declining principal balance.[4]

_____

[3] The Nomura decision was issued in related RMBS litigation
brought under the federal Securities Act and certain Blue Sky
Laws.

[4] The defendants also contend that prejudgment interest should be
calculated on the "consideration paid" reduced by both principal
and interest payments received on the Certificates.  The TSA
provides that interest is calculated on "consideration [] paid,"
in subsection (a), which is distinct from "income [] received"
under subsection (b).  For that reason, interest payments are
not deducted prior to calculating prejudgment interest.  The
Court reached the same conclusion with respect to the federal
Securities Act and the Virginia and District of Columbia Blue
Sky Laws.  Nomura II, 2015 WL 640875, at *2.

This conclusion is consistent with the purpose of the remedy of rescissory damages.  Under Texas law, "[r]escission is intended to restore plaintiffs to their original position." Texas Capital Sec., Inc. v. Sandefer, 58 S.W.3d 760, 776 (Tex. App. 2001).  The Texas Supreme Court has held that an award of prejudgment interest should "compensate for the lost time value of money, no more and no less."  Carl J. Battaglia, M.D., P.A. v. Alexander, 177 S.W.3d 893, 907 (Tex. 2005).  With each principal repayment received by the Credit Unions, they recovered a portion of the consideration they paid for the Certificates.  As consideration was returned to the Credit Unions, it was no longer invested in the Certificates and thus the status quo ante was partially restored.  Furthermore, the Credit Unions were free to utilize those funds as they saw fit, including allocating them to other interest-bearing investments. Thus, awarding prejudgment interest on the initial consideration paid without reductions for principal repayments would provide a windfall to NCUA.[5]

---

[5] Use of NCUA's proposed method would substantially increase the award of prejudgment interest.  For example, NCUA's damages expert, John D. Finnerty, calculated prejudgment interest under the TSA for the eight Certificates purchased by Southwest, which had a combined notional value of $130,845,000.  According to his report, use of the entire initial principal balance would result in $114,394,066 of prejudgment interest.  Use of the declining principal balance would result in $53,941,399 of prejudgment interest.  These calculations assumed an interest rate of 10%,

NCUA's arguments to the contrary are unavailing.  First,
NCUA argues that the statutory language that "a buyer shall
recover (a) the consideration the buyer paid for the security
plus interest thereon," requires that interest be calculated
without any reduction for principal repayments.  NCUA points out
that (1) the statute addresses reductions only in subpart (b),
which provides that the award is reduced by income received from
the security and therefore no reduction is allowed under subpart
(a); and (2) that the use of the past tense "paid" refers to the
original payment only.  These arguments fail.  The reduction for
income in subpart (b) reduces a plaintiff's recovery by the
amounts it has already recouped, either from principal
repayments or by disposition of the security.  Consistent with
the purposes of the remedy of rescission or rescissory damages,
subpart (b) ensures a plaintiff is put in no better position
than had it never purchased the security.  It does not require
that prejudgment interest be calculated on the initial principal
balance without a reduction for principal repayments.  Nor does
the use of the past tense "paid" mean that the consideration is
necessarily a fixed amount.  The same term is used in the
federal Securities Act and the Virginia and District of Columbia
Blue Sky Laws, and those statutes require prejudgment interest

_____

and thus do not reflect the appropriate rate, as discussed
below.

10

to be calculated on the declining principal balance.  Nomura II,
2015 WL 640875, at *2.  While it is a feature of these
Securitizations that Certificate-holders could expect ongoing
returns of principal as well as interest payments, the damages
provisions of the federal Securities Act and TSA cover not only
situations like these but also those in which there has been no
recovery of any consideration.  Accordingly, there is no
negative inference to be drawn from the fact that these statutes
do not explicitly address partial returns of consideration.

Second, NCUA argues that Nomura is not controlling because
(1) Nomura involved a claim for actual rescission whereas NCUA's
claims are for rescissory damages, (2) the plaintiff in Nomura
did not dispute the use of the declining principal balance to
calculate prejudgment interest, and (3) the language of the
Virginia and District of Columbia Blue Sky Laws at issue in
Nomura is materially different than the TSA.  These arguments
also fail.  Under the TSA, the only difference between
rescission and rescissory damages is that the award is reduced
by the amount the plaintiff received upon disposition of the
security.  Compare Tex. Rev. Civ. Stat. Ann. art. 581 § 33(D)(1)
with id. art. 581 § 33(D)(3).  Nothing in the statutory text
indicates that prejudgment interest is calculated differently
depending on whether the plaintiff has disposed of the security.
Nor does the fact that the plaintiff in Nomura failed to raise

this argument aid NCUA because the Court in <u>Nomura</u> did reach
this issue and held that the "consideration paid" was an amount
that declined "[w]ith the return of principal each month."
<u>Nomura II</u>, 2015 WL 640875, at *2.  Finally, the statutes at
issue in <u>Nomura</u> are materially identical to the TSA with respect
to the calculation of damages.[6]

**B.   Illinois Securities Law**

Damages for violation of the ISL are determined as follows:

> [E]ach underwriter, dealer, internet portal, or
> salesperson who shall have participated or aided in
> any way in making the sale  . . . shall be jointly and
> severally liable to the purchaser as follows:
>
> (1)     for the full amount paid, together with interest
> from the date of payment for the securities sold at
> the rate of the interest or dividend stipulated in the
> securities sold (or if no rate is stipulated, then at
> the rate of 10% per annum) less any income or other
> amounts received by the purchaser on the securities,
> upon offer to tender to the seller or tender into

---

[6] Under the federal Securities Act, a plaintiff may "recover the
consideration paid for such security with interest thereon, less
the amount of any income received thereon, upon the tender of
such security, or for damages if he no longer owns the
security."  15 U.S.C. § 77l.  Under the Virginia Blue Sky Law, a
plaintiff may "recover the consideration paid for such security,
together with interest thereon at the annual rate of six
percent, costs . . . less the amount of any income received on
the security, upon the tender of such security, or for the
substantial equivalent in damages if he no longer owns the
security."  Va. Code Ann. § 13.1-522.  Under the District of
Columbia Blue Sky Law, a plaintiff may "recover the
consideration paid for the security, interest at the rate used
in the Superior Court of the District of Columbia from the date
of payment, costs . . . less the amount of any income received
on the security, upon the tender of the security and any income
received on it; or [recover] damages if the buyer no longer owns
the security."  D.C. Code Ann. § 31-5606.05.

court of the securities sold or, where the securities
were not received, of any contract made in respect of
the sale; or

(2)     if the purchaser no longer owns the securities,
for the amounts set forth in clause (1) of this
subsection A less any amounts received by the
purchaser for or on account of the disposition of the
securities.

815 Ill. Comp. Stat. Ann. 5/13.  As with the TSA, the ISL does

not expressly address whether the phrase "together with

interest" refers to the initial purchase price without any

reduction for principal repayments or rather an amount that is

reduced with each principal repayment received by the purchaser.

Illinois courts look to federal law when interpreting provisions

in the ISL that closely track with the federal Securities Act.

See Tirapelli v. Advanced Equities, Inc., 813 N.E.2d 1138, 1142

(Ill. App. 2004) (concerning §§ 17(a)(1)-(3) of the federal

Securities Act).  As discussed above, prejudgment interest under

federal law is calculated using the declining principal balance.

Nomura II, 2015 WL 640875, at *2.  For that reason, prejudgment

interest under the ISL must also be calculated using the

declining principal balance.[7]

     This conclusion is consistent with the purposes of

rescissory damages and prejudgment interest.  Under Illinois

law, rescission "refers to cancellation of the contract so as to

---

[7] As discussed in connection with the TSA, interest income will
not be deducted prior to calculating prejudgment interest.

restore the parties to the status quo <u>ante</u>, the status before the contract." <u>Newton v. Aitken</u>, 260 Ill. App. 3d 717, 719 (1994). The Illinois Supreme Court has held that the ISL is intended "to compensate investors for their lost return and to make the investor whole," and that damages under the ISL are "compensatory, not punitive." <u>Goldfine v. Barack, Ferrazzano, Kirschbaum & Perlman</u>, 18 N.E.3d 884, 894 (Ill. 2014). As discussed in connection with the TSA, use of the initial purchase price without a reduction for principal repayments would provide a windfall to NCUA by putting it in a better position than if the Credit Unions had never purchased the Certificates.

NCUA principally raises two arguments. Neither has merit. First, NCUA argues that the phrase "the full amount paid, together with interest" must be read to require prejudgment interest to be calculated on only the initial amount paid without any reduction for principal repayments. The language of the ISL, however, is similar to those under the federal Securities Law and its other Blue Sky progeny. The only distinction is the inclusion of the word "full," which modifies "amount paid." While this addition may emphasize the statute's intent to make a buyer whole, it should not be read to indicate that the plaintiff has a right to recover an amount in excess of that. NCUA also argues that the use of the past tense "paid"

refers to the original payment only.  As discussed in connection with the TSA, the federal Securities Act also uses the past tense "paid" and this is not a basis to apply a method other than the declining principal method in awarding prejudgment interest.

Second, NCUA contends that the Illinois Supreme Court's decision in Goldfine requires prejudgment interest to be calculated only on the initial principal balance without a reduction for principal repayments.  That case concerned a claim for legal malpractice after a law firm failed to bring claims under the ISL within the statute of limitations.  The underlying ISL claim concerned the purchase of stock, not a security for which the purchaser was entitled to principal repayments. Before the legal malpractice suit was tried, the plaintiffs settled other underlying claims for common law fraud and violation of the Illinois Consumer Fraud and Deceptive Business Practices Act.  The Illinois Supreme Court was presented with the question of whether the settlement amounts should be subtracted from the consideration before calculating the plaintiff's prejudgment interest.  The court held that the ISL "requires the calculation of interest prior to deducting any amounts received by the purchaser."  Id. at 898.  This holding concerned only the settlement payments and has nothing to do with whether prejudgment interest is calculated on the declining

principal balance, which was not even at issue in the case.[8]  For
that reason, Goldfine does not aid NCUA's position.

## II.  Interest Rate Under the Texas Securities Act[9]

Under the TSA, interest is calculated "at the legal rate."
Tex. Rev. Civ. Stat. Ann. art. 581 § 33(D)(1),(3).  The "legal
rate" is set by statute in Chapter 304 of the Texas Finance
Code.[10]  Prejudgment interest is governed by two provisions.  For
a judgment granted "on a contract," prejudgment interest is
calculated at "the rate specified in the contract."  Tex. Fin.
Code Ann. § 304.002.[11]  For any other type of claim, prejudgment

---

[8] Immediately following the sentence quoted by NCUA, the Goldfine
court states:  "Accordingly, we affirm the appellate court's
determination that the trial court erroneously applied a
proportionate reduction of the plaintiffs' $3.2 million
Steinberg settlement to each of the 11 securities purchases
prior to calculating interest.  The interest must be calculated
by the trial court prior to deducting the $3.2 million
settlement."  Goldfine, 18 N.E.3d at 898.

[9] The parties do not dispute that, under the ISL, interest is
calculated at the coupon rate.

[10] Although the provisions of the Texas Finance Code only
expressly set the rate of postjudgment interest, under Texas
law, prejudgment interest accrues at the same rate as
postjudgment interest.  Arete Partners, L.P. v. Gunnerman, 643
F.3d 410, 415 (5th Cir. 2011) (quoting Johnson & Higgins of
Tex., Inc. v. Kenneco Energy, Inc., 962 S.W.2d 507, 532 (Tex.
1998)).  The parties do not dispute this issue.

[11] The predecessor to § 304.002, in existence before 1999,
provided that "[a]ll judgments of the courts of this state based
on a contract that provides for a specific rate of interest earn
interest at a rate equal to the lesser of (1) the rate specified
in the contract; or (2) 18 percent."  Texas Civ. St. Art. 5069-
1.05.  Texas replaced this section with § 304.002 in 1999 as

interest is calculated at the prime rate as published by the Federal Reserve, or five percent, whichever is greater.[12]  Tex. Fin. Code Ann. § 304.003.  NCUA contends that § 304.003 governs, while the defendants argue that the prejudgment interest rate should be the coupon rate for each Certificate.

The applicable interest rate turns on whether NCUA's rescissory damages claims under the TSA are "on a contract."  In interpreting ambiguity in a state statute, a federal court must predict how the state's highest court would decide the issue.  Michalski v. Home Depot, Inc., 225 F.3d 113, 116 (2d Cir. 2000).  Decisions of intermediate appellate courts may serve as evidence of how the state's highest court would rule.  Id.

The Texas Supreme Court has not addressed whether a claim for rescissory damages under the TSA is "on a contract" for purposes of awarding prejudgment interest under the Texas Finance Code.  Similarly, the parties have not identified, and the Court is unaware of, any Texas intermediate appellate decisions directly addressing this issue.  The Texas appellate

---

part of a "topic-by-topic revision of the state's general and permanent statute law without substantive change."  Tex. Fin. Code Ann. § 1.001.  That the Texas legislature intended no substantive change between the phrases "based on a contract" and "on a contract" further supports application of § 304.002 to NCUA's TSA claims.

[12] The parties agree that the rate under § 304.003 would be five percent.

cases cited by NCUA do not aid in this determination because none of them addresses the issue of whether a claim for rescissory damages under TSA is "on a contract."

Two of the cases used the rate set forth in § 304.003, but neither involved claims under the TSA or suggested that there was any interest rate specified in any underlying contract for the claims at issue.  See Citizens Nat'l Bank of Tex. v. NXS Constr., Inc., 387 S.W.3d 74, 92 (Tex. App. 2012) (claim under the Uniform Fraudulent Transfer Act for fraudulent transfer of the customers of a telecommunications company); Dal-Chrome Co. v. Brenntag Sw., Inc., 183 S.W.3d 133, 146 (Tex. App. 2006) (claim under the Deceptive Trade Practices-Consumer Protection Act for selling a contaminated product).  To the extent Dal-Chrome rejects adoption of a contractual rate of interest because the judgment was for a statutory violation and "not on the letter agreement," id. at 147, its reasoning provides little guidance.  The contractual rate of interest to which it referred was not in an underlying contract but in a post-litigation agreement between the parties.

Duperier v. Texas State Bank, 28 S.W.3d 740, 754 (Tex. App. 2000), the most relevant case, did involve a TSA claim.  The court applied a 10 percent interest rate drawn apparently from § 304.003, to calculate prejudgment interest on the TSA claim,

but it did not explain why it did so.[13]  Even without any explanation, however, it is apparent that the interest rate could not have been chosen through application of § 304.002. The plaintiff in Duperier proved actual fraud related to the representations of the defendant about the interest rate for the security.  Within six months of the sale of the security, its interest rate fell to zero under the formula set forth in the prospectus.  The jury found that the defendants withheld material information from the investor that the interest rate was likely to fall to zero.  In that situation, it would have been inappropriate to use the zero interest rate from the prospectus formula to calculate prejudgment interest.  For these reasons, Duperier is not helpful in predicting whether the Texas Supreme Court would use § 304.002 to select the coupon rate set forth in a prospectus when the alleged misrepresentations about the security do not affect the integrity of the coupon rate.[14]

Having no reliable guidance on how the Texas Supreme Court would decide this issue, the Court turns to the rules of statutory interpretation used by Texas courts.  In construing

---

[13] As of 2000, § 304.003 set the minimum interest rate at ten percent.  In 2003, the statute was amended to set the minimum interest rate at five percent.

[14] This question cannot be certified to the Texas Supreme Court because only federal appellate courts may do so.  Tex. R. App. P. 58.1.

statutory language, the Texas Supreme Court starts "with the
ordinary meaning of the statutory text," and analyzes the
language "in context, considering the specific sections at issue
as well as the statute as a whole."  Randol Mill Pharmacy v.
Miller, 465 S.W.3d 612, 615 (Tex. 2015) (citation omitted).
Turning first to the statutory text, the ordinary meaning of
"on," as used here, is "with regard to" or "with reference or
relation to."  Merriam-Webster Unabridged Dictionary (2016
online ed.).  On its face, therefore, § 304.002 is not limited
to claims styled as "breach of contract."  The Texas legislature
elsewhere in the Texas Finance Code and in other statutes uses
the more specific term "breach of contract," but chose to use
the broader term "on a contract" in § 304.002.  See Tex. Fin.
Code Ann. § 393.204 ("The breach by a credit services
organization of a contract under this chapter . . . ."); see
also, e.g., Tex. Gov't Code Ann. § 2260.003 ("The total amount
of money recoverable on a claim for breach of
contract . . . ."); Tex. Gov't Code Ann. § 2260.051 ("A
contractor must provide written notice to the unit of state
government of a claim for breach of contract . . . .").  In
construing a Texas statute, the Court must "presume the
Legislature selected language in a statute with care and that
every word or phrase was used with a purpose in mind."  Texas

Lottery Comm'n v. First State Bank of DeQueen, 325 S.W.3d 628, 635 (Tex. 2010).

NCUA's claim for rescissory damages under the TSA relate to a contract.  NCUA's TSA claims seek damages equivalent to unwinding the purchase of the Certificates, which were governed by the terms of the Offering Documents, including the Prospectus Supplements, which contain a coupon interest rate.  NCUA's claims would not exist but for the existence of a contractual relationship between the Credit Unions and the defendants. Moreover, the remedy sought by NCUA, rescissory damages, is inherently contractual in nature.  Fed. Hous. Fin. Agency v. Nomura Holding Am. Inc., 68 F. Supp. 3d 486, 497 (S.D.N.Y. 2014) ("Nomura III") ("Inherent in the remedy of rescission is the return of the parties to their pre-contract positions.").

This interpretation of the clause "on a contract" within § 304.002 is consistent with the purpose of awarding prejudgment interest under Texas law, which is to "compensate for the lost time value of money, no more and no less."  Battaglia, 177 S.W.3d at 907.  It is also consistent with the purpose of rescissory damages under the TSA, which is to "restore plaintiffs to their original position."  Texas Capital Sec., Inc. v. Sandefer, 58 S.W.3d 760, 776 (Tex. App. 2001).  Finally, as the Court held in Nomura, use of the coupon rate "vindicates the [plaintiff's] original expectations when purchasing the

Certificates." Nomura I, 104 F. Supp. 3d at 584. This is because use of the coupon rate awards a plaintiff the same interest it expected to receive by virtue of purchasing the Certificate. Accordingly, reading "on a contract" to include the TSA claims brought here is consistent with both the Texas Finance Code and the TSA.

NCUA's argument that § 304.002 applies only to breach of contract claims is unavailing for the reasons already discussed. NCUA also argues that its TSA claims are not "on a contract" because the Court, in Fed. Hous. Fin. Agency v. UBS Americas, Inc. ("FHFA"), 858 F. Supp. 2d 306, 316 (S.D.N.Y. 2012), aff'd, 712 F.3d 136 (2d Cir. 2013), held that the statute of limitations for claims brought under § 12 of the federal Securities Act was extended by three years because the claims were "tort claim[s]." See 12 U.S.C. § 4617(b)(12) ("HERA"). This argument is unpersuasive. HERA draws a distinction between a "contract claim," which benefits from a six-year extension, and a "tort claim," which receives a three-year extension. Id. Whether a claim is a "contract claim" for purposes of HERA is a narrower inquiry than whether a claim is "on a contract" for purposes of awarding prejudgment interest under the TSA. Indeed, in other contexts, the Court has referred to claims under the federal Securities Act as "most analogous to an equitable action for rescission of contract." Nomura III, 68 F.

Supp. 3d at 496.  Accordingly, prejudgment interest for NCUA's TSA claims will be calculated at the coupon rate for each Certificate.

## Conclusion

The Defendants' February 5, 2016 Motion for Partial Summary Judgment on the Proper Calculation of Prejudgment Interest is granted insofar as (1) prejudgment interest shall be calculated based on the declining principal balance for each Certificate and (2) prejudgment interest under the TSA and ISL shall be calculated using the coupon rate applicable for each Certificate.

Dated:    New York, New York
          March 24, 2016

                    _____
                         DENISE COTE
                United States District Judge